# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**LEGORGY E. DAVIS**
**AKA LEGREGORY E. DAVIS (#108141)**                    **CIVIL ACTION**

**VERSUS**

                                                       **26-19-JWD-RLB**

**LOUISIANA STATE PENITENTIARY, ET AL.**

## ORDER

The *pro se* Plaintiff, an inmate confined at the Louisiana State Penitentiary, Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against Defendants Louisiana State Penitentiary and Louisiana Department of Public Safety and Corrections, complaining that his constitutional rights are being violated due to deliberate indifference to his serious medical needs, deliberate indifference to his health and safety, denial of access to the courts due to the processing of his grievances, and failure to provide accommodations as required by the ADA. Plaintiff will be ordered to amend his Complaint as set forth below.

### Person Acting Under Color of State Law

"To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a ***person*** acting under color of state law.' " *James v. Tex. Collin Cnty.,* 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.,* 233 F.3d 871, 874 (5th Cir. 2000) (emphasis added). For example, Louisiana State Penitentiary and Louisiana Department of Public Safety and Corrections are not persons within the meaning of section 1983.

**Personal Involvement**

In order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that the defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 F. App'x. 715, 716–17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

**Deliberate Indifference**

A prison official violates the Eighth Amendment's prohibition of cruel and unusual punishment if the official shows deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–06 (1976). The official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety" and "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists". *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official also must draw that inference. *Id*.

Failed treatments, negligence, and medical malpractice are insufficient to give rise to a claim of deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). A prisoner who disagrees with the course of treatment or alleges that he should have received further treatment also does not raise a claim of deliberate indifference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Instead, an inmate must show that prison officials denied him treatment, purposefully provided him improper treatment, or ignored his medical complaints. *Id*. A delay in treatment may violate the Eighth Amendment if the delay was the result of the prison official's deliberate indifference and substantial harm—including suffering—occurred during the delay. *Easter v. Powell*, 467 F.3d 459, 464–65 (5th Cir. 2006).

## Failure to Protect

Under the Eighth Amendment to the United States Constitution, a prisoner has a constitutional right to be sheltered from the threat of harm or violence at the hands of other inmates. *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986); *Jones v. Diamond*, 636 F.2d 1364, 1373 (5th Cir. 1981). Specifically, prison officials "have a duty ... to protect prisoners from violence at the hands of other inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "Deliberate indifference" is the appropriate standard to be applied in this context, and this term has been defined as including an element of "subjective recklessness" as used in the criminal law. *Id.* at 837. A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Id. at 847*. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id.* at 837.

**Access to the Courts**

A substantive right of access to the courts has long been recognized. *Lewis v. Casey,* 518 U.S. 343, 347 (1996), *citing Bounds v. Smith,* 430 U.S. 817, 821 (1977). Specifically, access to the courts is incorporated into the First Amendment right to petition the government for redress of grievances. *Driggers v. Cruz,* 740 F.3d 333, 336–37 (5th Cir. 2014) citing *Bill Johnson's Rests., Inc. v. N.L.R.B.,* 461 U.S. 731 (1983). In its most obvious and fundamental manifestation, this right protects an inmate's physical access to the courts. Thus, for example, prison officials may not block or refuse to transmit, through procedural devices or otherwise, the transmission of legal documents that prisoners wish to send to the courts. *Ex parte Hull,* 312 U.S. 546 (1941) (striking down a state regulation prohibiting prisoners from filing petitions for habeas corpus without the approval of a state official); *Jackson v. Procunier,* 789 F.2d 307, 310–11 (5th Cir. 1986) (prison officials may not deliberately delay mailing legal papers when they know that such delay will effectively deny a prisoner access to the courts). Nor can they take other actions—such as confiscating or destroying legal papers—that would have a similar effect. *See Foster v. City of Lake Jackson,* 28 F.3d 425, 429 (5th Cir. 1994), *citing Crowder v. Sinyard,* 884 F.2d 804, 811 (5th Cir.1 989). The fundamental constitutional right of access to the courts also requires that prison authorities assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977). This right extends to pretrial detainees as well as to convicted inmates. *Boyd v. Nowack,* 2010 WL 892995, *2 (E.D. La. March 11, 2010), *citing United States v. Moya–Gomez,* 860 F.2d 706, 743 (7th Cir. 1988).

The right of access to the courts, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to

sentences or conditions of confinement before the courts." *Lewis v. Casey, supra,* 518 U.S. at 356. Further, in order to prevail on a claim of interference with access to the courts, an inmate claimant must be able to show that has he suffered some cognizable legal prejudice or detriment as a result of the defendant's actions. *Eason v. Thaler,* 73 F.3d 1322, 1328 (5th Cir. 1996). In addition, the plaintiff must be able to show that the defendant had an intent to interfere with the plaintiff's right to submit pleadings to the courts or was otherwise deliberately indifferent to the plaintiff's wish to do so. *See Herrington v. Martin,* 2009 WL 5178340, *2 (W.D. La., Dec. 23, 2009) (recognizing that "[a]n 'access to courts' claim is actionable only if the deprivation stemmed from intentional conduct on the part of the defendant; 'access to courts' claims premised on a defendant's mere negligence or inadvertence are not cognizable under § 1983"). Finally, an inmate's right to seek access to the courts is limited to the making of non-frivolous claims involving the assertion of legitimate constitutional rights. *Johnson v. Rodriguez,* 110 F.3d 299, 311 (5th Cir. 1997). Therefore, because the right to access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court," *Christopher v. Harbury,* 536 U.S. 403, 415 (2002), "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Id.*

**Americans with Disabilities Act ("ADA ")
and Section 504 of the Rehabilitation Act ("RA")**

Title II of the ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. It defines "public entities" to include local governments. *Id.* at § 12131(1)(A). The United States Supreme Court has held that prisons are public entities that may

not exclude disabled individuals from participation in or deny them the benefits of their services, programs, or activities. *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)).

Similarly, the Rehabilitation Act prohibits any "otherwise qualified individual with a disability in the United States" from being "excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination under any program or activity receiving Federal financial assistance," including any instrumentality of a local government. 29 U.S.C. § 794. The remedies, procedures, and rights available under the Rehabilitation Act parallel those available under the ADA. *Cadena*, 946 F.3d at 723 (citing *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (quoting 42 U.S.C. § 12133)). "Thus, '[J]urisprudence interpreting either section is applicable to both.'" *Cadena*, 946 F.3d at 723 (citing *Delano-Pyle*, 302 F.3d at 574) (quoting *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000)). Accordingly, the Court analyzes Plaintiff's ADA and RA claims under one rubric. *See Guy v. LeBlanc*, 400 F. Supp. 3d 536, 540–41 (M.D. La. 2019)." (citations omitted). To demonstrate a violation of either Title II of the ADA or Section 504 of the RA, "a plaintiff must prove '(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability.' " *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018).

The Supreme Court in *Pa. Dep't of Corrections v. Yeskey*, 524 U.S. 206, 209–10 (1998), recognized that state prisoners may bring claims against their jailors for disability discrimination under Title II of the ADA, which prohibits discrimination by public entities. The term "public entity" in Title II does not include individuals; therefore, individual defendants cannot be held

personally liable for violations of Title II of the ADA. *Walker v. Snyder*, 213 F.3d 344, 347 (7th Cir. 2000), *abrogated on other grounds by Bd. of Trustees v. Garrett*, 531 U.S. 356, 374 n. 9 (2001), *as stated in Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 912 (7th Cir. 2003).

An ADA suit against a state official in his or her official capacity is not a suit against the official but rather a claim against the official's office. *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 420 n.5 (5th Cir. 2017); *see Phillips ex rel. J.H. v. Prator*, No. 20-30110, 2021 WL 3376524, at *2 (5th Cir. Aug. 3, 2021) ("As a defendant she named Sheriff Prator in his official capacity, which means this is a suit against the Sheriff's Office."). If a plaintiff brings suit against the Louisiana Department of Public Safety and Corrections, any claims against any individual defendants in their official capacities are duplicative of those against the entity itself. *See Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) ("[A] party may not maintain a suit against both an employer and its agent under Title VII."); *Sims v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d 1068, 1081 (5th Cir. 1985) ("The district court's entry of judgment against *both* the corporation and [defendant] in her official capacity [in this § 1983 action] would therefore effectively make the corporation liable twice for the same act."). Therefore, the plaintiff cannot bring ADA/RA claims against both Louisiana Department of Public Safety and Corrections and the individual defendants in their official capacities. *See Rojas v. City of Grand Prairie*, No. 3:18-CV-1776-K, 2019 WL 1115052, at *6 (N.D. Tex. Mar. 11, 2019) ("[Plaintiff] cannot bring an ADA action against [defendant] in [defendant's] official capacity because [plaintiff] is suing the City on the same facts."); *Harville v. Texas A & M Univ.*, 833 F. Supp. 2d 645, 659 n.8 (S.D. Tex. 2011) (dismissing RA claims against defendants in their official capacities because "those claims duplicate [plaintiff's] claims against [the entity]");

*Shabazz v. Tex. Youth Comm'n*, 300 F. Supp. 2d 467, 474 (N.D. Tex. 2003) (referencing *Indest*) ("The Fifth Circuit's rationale for prohibiting concurrent suits under Title VII against an employer and the employer's agent in her official capacity is equally applicable under the ADA."). Accordingly,

**IT IS ORDERED** that the plaintiff shall have 21 days to amend his Complaint to add additional defendants, if necessary, and factual allegations which shall indicate how each defendant was personally involved, for each claim for which he seeks relief.

**IT IS FURTHER ORDERED** that failure to amend the Complaint, as ordered, may result in dismissal of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A.

Signed in Baton Rouge, Louisiana, on July 21, 2026.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**